# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### WESTERN DIVISION

| | |
|---|---|
| ALICIA BOSCALJON, | CASE NO. 3:25-CV-01541-JRK |
| Plaintiff, | JUDGE JAMES R. KNEPP, II |
| vs. | MAGISTRATE JUDGE DARRELL A. CLAY |
| COMMISSIONER OF SOCIAL SECURITY, | **REPORT AND RECOMMENDATION** |
| Defendant. | |

### INTRODUCTION

Plaintiff Alicia Boscaljon challenges the Commissioner of Social Security's decision denying supplemental security income (SSI). (ECF #1). The District Court has jurisdiction under 42 U.S.C. §§ 1383(c) and 405(g). This matter was referred to me under Local Civil Rule 72.2 to prepare a Report and Recommendation. (Non-document entry dated July 24, 2025). For the reasons below, I recommend the District Court **REVERSE** the Commissioner's decision and **REMAND** the matter for further administrative proceedings.

### PROCEDURAL BACKGROUND

On January 18, 2023, Ms. Boscaljon applied for SSI, alleging disability beginning April 20, 2022 due to degenerative disc disease; high blood pressure; spinal fusion of L4-L5 vertebrae; diabetes; diabetic neuropathy; migraines; brachialgia; arthritis; neck, shoulder, and upper-back pain; depression; anxiety; recent surgery; and potential autism. (Tr. 735). After her claim was denied initially and on reconsideration, Ms. Boscaljon requested a hearing before an

1

administrative law judge. (Tr. 758, 776, 806). On June 10, 2024, Ms. Boscaljon (represented by counsel) and a vocational expert (VE) testified before the ALJ. (Tr. 698-732). On July 31, 2024, the ALJ determined Ms. Boscaljon was not disabled. (Tr. 678-91). On May 27, 2025, the Appeals Council denied Ms. Boscaljon's request for review, making the hearing decision the final decision of the Commissioner. (Tr. 1-4; *see also* 20 C.F.R. § 416.1481). Ms. Boscaljon timely filed this action on July 24, 2025. (ECF #1).

FACTUAL BACKGROUND

## I.      Personal and Vocational Evidence

Ms. Boscaljon was 34 years old on her application date and 36 years old at the hearing. (*See* Tr. 735, 698). She completed a two-year college program to become a veterinary technician and has past work experience as a fast-food worker. (Tr. 707, 724).

## II.      Relevant Medical Evidence[1]

Ms. Boscaljon has a history of back, shoulder, and neck pain caused by degenerative disc disease in her cervical and lumbar spine areas and shoulder disease. (*See* Tr. 1093, 1104, 1111, 1121, 1125, 1268-69, 1288, 1569). Her pain has persisted despite injections and multiple surgeries, including a 2017 decompressive lumbar laminectomy at L4-L5 and a 2020 lumbar decompression and transforaminal interbody fusion at L4-L5 and L5-S1. (Tr. 1092, 1094). Her neck pain radiates over her right shoulder and fingers as well as into her head, where it can trigger migraines, nausea, and panic attacks. (Tr. 1070, 1314, 1570). Ms. Boscaljon also experiences

---

[1]      Because Ms. Boscaljon challenges the ALJ's determination at Step Five that she can perform other jobs that exist in significant numbers in the national economy and not the ALJ's evaluation of her impairments or limitations, I limit my discussion of the record to the necessary background.

2

chronic knee pain and underwent a surgical repair on her right knee but has lasting pain for which she receives physical therapy. (Tr. 2142-43, 2147; *see also* Tr. 59, 170-72, 187-90).

### III.     Relevant Testimonial Evidence

The ALJ posed to the VE a hypothetical person with Ms. Boscaljon's age, education, experience, and residual functional capacity. (*Compare* Tr. 724-25 *with* Tr. 684-85). The VE opined such a person could work as a document preparer and surveillance-system monitor.[2] (Tr. 726). The VE explained those jobs were performed differently than described in the *Dictionary of Occupational Titles* (DOT). (Tr. 726-27). The VE relayed the DOT defined a document preparer as preparing documents for scanning into microfiche and microfilm but, while there still was some work involving microfiche and microfilm, the VE viewed the job as now involving preparing documents for scanning into a computer system. (Tr. 726). For surveillance-system monitor, the VE relayed the DOT defined the job as solely for government surveillance systems, but the VE views the job as now involving amusement parks, schools, and high-rise buildings. (Tr. 726-27).

The VE estimated 15,500 document preparer and 3,000 surveillance-system monitor jobs were available in the national economy. (Tr. 726). When Ms. Boscaljon's counsel asked about the basis for these numbers, the VE explained they were "full-time, estimated DOT-specific jobs" that she had not independently confirmed through her own surveys. (Tr. 731). The VE further stated she had placed people in these positions but not in the past five years. (*Id.*).

---

[2]     The VE also opined such a person could work as an address clerk. (Tr. 726). But after a post-hearing objection, the ALJ "eliminated" that job "due to the vocational expert's lack of placement." (Tr. 690).

### STANDARD FOR DISABILITY

Eligibility for benefits turns on the existence of a disability. 42 U.S.C. § 423(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* § 1382c(a)(3)(A); *see also* 20 C.F.R. § 416.905(a).

The Commissioner follows a five-step evaluation process—found at 20 C.F.R. § 416.920—to determine whether a claimant is disabled:

1. Was claimant engaged in a substantial gainful activity?

2. Did claimant have a medically determinable impairment, or a combination of impairments, which is "severe," defined as one which substantially limits an individual's ability to perform basic work activities?

3. Does the severe impairment meet one of the listed impairments?

4. What is claimant's residual functional capacity and can claimant perform past relevant work?

5. Can claimant do any other work considering his or her residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at Step Five to prove whether the claimant has the residual functional capacity (RFC) to perform available work in the national economy. *Id.* The ALJ considers the claimant's RFC, age, education, and past work experience to determine whether the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is the claimant deemed disabled. 20 C.F.R. § 416.920(b)-(f); *see also Walters*, 127 F.3d at 529.

### THE ALJ'S DECISION

At Step One, the ALJ determined that Ms. Boscaljon had not worked since her application date. (Tr. 680). At Step Two, the ALJ identified the following severe impairments: residual effects of lumbar spine fusion; residual effects of cervical spine fusion; thoracic spine degenerative disc disease; neuropathy; orthostatic hypotension; bilateral knee degenerative disc disease; obesity; major depressive disorder; anxiety disorder; and attention deficit hyperactivity disorder. (*Id.*). At Step Three, the ALJ found Ms. Boscaljon's impairments did not meet or medically equal the requirements of a listed impairment. (Tr. 681-84).

At Step Four, the ALJ determined Ms. Boscaljon's RFC as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 C.F.R. § 416.967(a) except occasional climbing ramps and stairs, stooping, and crouching; never climb ladders, ropes, or scaffolds, kneeling, or crawling; frequent reaching in all directions with the bilateral upper extremities; frequent handling and fingering with the bilateral upper extremities; occasional exposure to dust, odors, fumes, and pulmonary irritants; no exposure to extreme heat, extreme cold, moving mechanical parts, and unprotected heights; and no commercial driving. The claimant can understand, remember, and carry out simple tasks but no work that requires satisfaction of production quotas or that involves assembly line pace; able to make simple work-related decisions; have occasional interaction with co-workers and supervisors but no interaction with the general public; and able to deal with occasional changes in a work setting explained in advance.

(Tr. 684-85) (cleaned up). The ALJ concluded Ms. Boscaljon could not perform her past relevant work as a fast-food worker. (Tr. 689). At Step Five, the ALJ determined Ms. Boscaljon could perform other work in the national economy, including as a document preparer and surveillance-system monitor. (Tr. 689-90). Thus, the ALJ concluded Ms. Boscaljon was not disabled. (Tr. 691).

### STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the

5

correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters,* 127 F.3d at 528. The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.,* 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). "Substantial evidence" is "more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Hum. Servs.,* 966 F.2d 1028, 1030 (6th Cir. 1992). But "a substantiality of evidence evaluation does not permit a selective reading of the record. Substantiality of evidence must be based upon the record taken as a whole. Substantial evidence is not simply some evidence, or even a great deal of evidence. Rather, the substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Brooks v. Comm'r of Soc. Sec.,* 531 F.App'x 636, 641 (6th Cir. 2013) (cleaned up).

In determining whether substantial evidence supports the Commissioner's findings, the court does not review the evidence de novo, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Hum. Servs.,* 889 F.2d 679, 681 (6th Cir. 1989). Even if substantial evidence (or indeed a preponderance of the evidence) supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.,* 336 F.3d 469, 477 (6th Cir. 2003). This is because there is a "zone of choice" within which the Commissioner can act, without fear of court interference. *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986).

Apart from considering whether substantial evidence supports the Commissioner's decision, the court must determine whether proper legal standards were applied. The failure to apply correct legal standards is grounds for reversal. *Walters,* 127 F.3d at 528. Even if substantial

6

evidence supports the ALJ's decision, the court must overturn when an agency does not follow its own regulations and thereby prejudices or deprives the claimant of substantial rights. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004).

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F.Supp.2d 875, 877 (N.D. Ohio 2011) (internal quotations omitted); *accord Shrader v. Astrue*, No. 11-13000, 2012 WL 5383120, at *6 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked.").

## DISCUSSION

Ms. Boscaljon argues the ALJ erred at Step Five because the alternative jobs the ALJ claimed Ms. Boscaljon could still perform were obsolete and recent agency guidance obligated the ALJ to provide a greater explanation of how Ms. Boscaljon could meet the requirements of those jobs as they are performed today. (ECF #8 at PageID 2237). The Commissioner responds the ALJ complied with the guidance and properly explained the requirements of the jobs as performed today are consistent with Ms. Boscaljon's RFC. (ECF #10 at PageID 2250-51).

At Step Five, the ALJ determines whether the claimant, based on his or her RFC and vocational factors (such as age, education, and work experience), can "make an adjustment to other work." 20 C.F.R. § 416.920(g)(1). Unlike the other four steps, the burden shifts to the Commissioner at Step Five to "identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity and vocational profile." *Staymate v. Comm'r of Soc. Sec.*, 681 F.App'x 462, 469 (6th Cir. 2017) (quotation omitted).

7

In response to courts questioning the continued widespread existence of multiple jobs in the *Dictionary of Occupational Titles*, the Social Security Administration issued Emergency Message 24027 to require more explanation before an ALJ may rely on any of a list of criticized jobs to support a finding of no disability. *See Soc. Sec. Admin.*, *Emergency Message 24027: Guidance Regarding the Citation of Certain Occupations at Step Five of the Sequential Evaluation Process* (eff. Jun. 22, 2024) http://secure.ssa.gov/apps10/referencearchive.nsf/links/06212024022159PM. EM 24027 provides that:

> An adjudicator may not cite any of the DOT occupations listed below to support a framework "not disabled" determination or decision without additional evidence from a [vocational source] or [vocational expert] supporting the adjudicators conclusion that, as the occupation is currently performed:
>
> (1)    Its requirements are consistent with the individual's RFC, and
>
> (2)    It exists in the national economy in numbers that alone, or in combination with work in other cited occupations, are significant.

*Id.*

EM 24027 references both the document preparer and surveillance-system monitor jobs the ALJ cited. (*Compare id. with* Tr. 726 (listing the jobs by DOT number)). Although EM 24027 was issued on June 22, 2024 (two weeks after the administrative hearing), Ms. Boscaljon raised the issue in a post-hearing objection. (*See* Tr. 974). The ALJ ruled on the objection in the July decision (*see* Tr. 690), so EM 24027 as promulgated in 2024 applies to Ms. Boscaljon's case.[3]

---

[3]    After the ALJ's decision, the Social Security Administration issued a revised version of EM 24027 in January 2025. *See Soc. Sec. Admin., Emergency Message 24027 REV: Guidance Regarding the Citation of Certain Occupations at Step Five of the Sequential Evaluation Process* (Jan. 6, 2025), http://secure.ssa.gov/apps10/reference.nsf/links/01062025092030AM. Though the original version was in effect at the time of the ALJ's decision, for the purposes of this case, there are no differences between the versions: the guidance language quoted above is unchanged and the document preparer and surveillance-system monitor positions are in both versions.

Ms. Boscaljon's challenge focuses on the first step of EM 24027. She contends the ALJ did not elicit testimony from the VE explaining how the requirements of the document preparer and surveillance-system monitor positions—as performed today—were consistent with her RFC. (ECF #8 at PageID 2230). The Commissioner "acknowledges" the VE "did not explicitly state that the requirements of the jobs as currently performed were consistent with the RFC," but claims the ALJ nevertheless satisfied EM 20427's requirements because the VE "testified how the jobs are performed differently now than in the past and testified that an individual with [Ms. Boscaljon]'s RFC could perform those jobs." (ECF #10 at PageID 2250-51).

As EM 24027 was issued in mid-2024 (and revised in early 2025), little caselaw exists analyzing the quantum of "additional evidence" an ALJ must offer to rely on a listed job at Step Five and the parties have not cited any. One court in this district has found an ALJ complies with EM 24027 by relying on a VE's testimony and experience to describe how the jobs are performed in the present day and the current number of those jobs. *See Tester-Kopec v. Comm'r of Soc. Sec.*, No. 1:25-cv-1, 2025 WL 3628110, at *9-10 (N.D. Ohio Dec. 15, 2025). Other district courts outside this circuit have reached similar conclusions, though not uniformly so. *See, e.g., Oswaldo N. v. Comm'r of Soc. Sec.*, No. 1:24-cv-7970, 2025 WL 2062702, at *9 (S.D.N.Y. July 23, 2025); *Angelina S. v. Bisignano*, No. CV 25-346, 2026 WL 18765, at *4 (D.N.M. Jan. 2, 2026); *Rose v. Bisignano*, No. 7:24-cv-1141, 2026 WL 540781, at *2-3 (E.D.N.C. Feb. 26, 2026); *Ryan v. Comm'r of Soc. Sec.*, No. 5:25-cv-174, 2026 WL 1347418, at *8 (N.D. Tex. May 14, 2026); *McGinty v. Bisignano*, No. 1:25-cv-1965, 2026 WL 1413553, at *8 (M.D. Pa. May 20, 2026); *but see Julia K. v. Comm'r of Soc. Sec.*, No. 23-cv-193, 2024 WL 3760344, at *3-4 (E.D.N.Y. Aug. 9, 2024) (finding,

pre-EM 24027, the VE testimony was insufficient to show that the number of document-preparer positions, as currently performed, equates to those under the DOT).

In response to a post-hearing objection raising the issue, the ALJ found:

 . . . The vocational expert testified that given all of these factors the individual would be able to perform the requirements of sedentary unskilled representative occupations such as document preparer (DOT 249.587-018), 15,500 jobs nationally; and surveillance system monitor (DOT 379.367-010), 3,000 jobs nationally.

The undersigned accepts the vocational expert's testimony, as her sources of data are considered reliable. Her testimony accurately identifies the types and approximate number of jobs that the claimant could perform and is consistent with the information contained in the *Dictionary of Occupational Titles* (DOT) and *Selected Characteristics of Occupations* (SCO), pursuant to SSR 00-4p. Where not consistent or speaking to issues not specifically mentioned in these sources, the vocational expert has relied on her professional experience, education, and training. The vocational expert testified that the jobs listed above are performed slightly differently than as indicated in the DOT due to modernization. She noted that the document preparer position is now performed mostly with scanners rather than microfilm/microfiche, and the surveillance system monitor is not [*sic*] performed in the private sector, such as amusement parks, apartment buildings, etc., whereas the DOT indicates only government use. The representative jobs cited constitute a significant number of jobs existing in the economy as the vocational expert testified to the existence of approximately 18,800 [*sic*] in the national economy that the claimant could perform, which demonstrates that the vocational base of work is not seriously eroded by her limitations.

The claimant's representative submitted a post-hearing objection to the vocational expert's testimony arguing that the vocational expert's testimony is contradictory and inherently unreliable because she has no recent experience with the jobs she identified but provided numbers for the occupations. During the hearing the vocational expert stated that she had not made a placement to the address clerk position, which she initially identified, but the undersigned eliminated due to the vocational expert's lack of placement. With respect to the remaining two jobs, that the undersigned finds to exist in significant numbers, the vocational expert stated that has made placements [*sic*] these positions but not in the past five years. The claimant's representative argues that pursuant to EM 24027, the jobs may not be cited without additional evidence from a vocational expert supporting the adjudicator's conclusion that as the occupation is currently performed, it exists in the national economy in significant numbers. Despite the representative's assertion that the vocational expert must have recent individual placement experience to support citation to the jobs listed, the EM 24027 only requires vocational expert testimony as to the occupation not how she obtains that knowledge. Recent

10

individual placement is not the only source of information for a vocational expert. It is unreasonable to expect every vocational witness to have recent job placement experiences for every job in the DOT. Here the vocational expert testified that her testimony as to issues not addressed by the DOT are based on her education, training, and experience. Therefore, the undersigned denies the representative's objection.

(Tr. 690) (citation omitted).

The VE opined that a hypothetical person with the same limitations as Ms. Boscaljon's RFC could work as a document preparer or a surveillance-system monitor. (Tr. 724-26; *see also* Tr. 684-85). The ALJ then asked "are any or all of those jobs performed slightly different than as indicated in the DOT, due to modernization?" (Tr. 726). The VE explained that "[s]ome of the terminology used in the DOT is largely outdated" and though the entry for "document preparer refers to preparing documents for scanning into microfiche and microfilm, and while there are still facilities that do the microfiche and microfilm, what we're talking about is preparing documents for scanning into a computer system." (Tr. 726; *see also Document Preparer, Microfilming, Dictionary of Occupational Titles*, 249.587-018, 1991 WL 672349). As for the job of surveillance-system monitor, the VE explained the DOT entry refers to "government-only surveillance-system monitoring; however in the modern world of work, we're talking about amusement parks, school bus monitors, high-rise buildings, those kind of places." (Tr. 726-27; *see also Surveillance-System Monitor, Dictionary of Occupational Titles*, 379.367-010, 1991 WL 673244). The VE did not indicate whether either job's specific requirements, such as skill level or specific vocational preparation, had changed due to modernization. (*See* Tr. 726-27).

The Commissioner "acknowledges that the vocational expert did not explicitly state that the requirements of the jobs as currently performed were consistent with [Ms. Boscaljon's] RFC." (ECF #10 at PageID 2250). But the Commissioner contends the VE's "conclusion that an

11

individual with [Ms. Boscaljon]'s RFC could perform the jobs, coupled with her recognition and testimony about how the jobs are performed now, was sufficient to establish that the job requirements were consistent with [her] RFC" and that is enough to satisfy the ALJ's obligations under EM 24027. (*Id.* at PageID 2251).

EM 24027 requires "additional evidence" to "support[] the adjudicator's conclusion that, as the occupation is currently performed . . . [the occupation]'s requirements are consistent with the individual's RFC." The need for "additional evidence" implies ordinary reliance on the DOT in the same manner as when relying on other jobs at Step Five is not enough to establish the listed jobs' requirements. *See Elizabeth M. v. Bisignano*, No. 25-cv-2550, 2026 WL 686783, at *4 (D. Minn. Mar. 11, 2026) (describing EM 240247 as imposing "heightened evidentiary and articulation requirements."); *Ryan v. Comm'r of Soc. Sec.*, No. 5:25-CV-00174-BP, 2026 WL 1347418, at *7 (N.D. Tex. May 14, 2026) (describing EM 24027 as "imposing heightened requirements on ALJs considering certain representative occupations"). Instead, other evidence in the record must affirmatively indicate the listed jobs—as currently performed—are consistent with the claimant's RFC.

Here, the VE opined that a person with Ms. Boscaljon's RFC could work as a document preparer or surveillance-system monitor as described by the DOT. (*See* Tr. 726). And the VE explained that those jobs as currently performed no longer match DOT's *descriptions* (*i.e.*, using a scanner instead of microfiche or working in an amusement park instead of only for governments), but the VE made no mention of whether those jobs still match the DOT's *requirements*. (*See* Tr. 726-27).

Thus, the court is left with the VE providing the DOT's requirements, not the requirements of the jobs as currently performed. The court could presume the VE would have said something on her own initiative if those jobs' requirements had changed and thus the court infer from the VE's silence that they have not changed. But EM 24027 requires "additional evidence" that the claimant meets the jobs' current requirements, and the Commissioner bears the burden of proof at Step Five, so the Commissioner cannot rely on a lack of evidence that those jobs have changed as evidence that those jobs are unchanged.

Indeed, in other cases on this issue, VEs have affirmatively testified the requirements for document preparer and surveillance-system monitor have not changed. *See McGinty*, 2026 WL 1413553, at *8 (noting the VE testified document preparer and surveillance-system monitor remained "at the unskilled level."); *Rose*, 2026 WL 540781, at *3 (noting the VE "relied on training and experience for these issues, and noted [addresser and document preparer] are still unskilled/SVP 2 as they are generally performed and available in the economy in the numbers cited above"); *Oswaldo N.*, 2025 WL 2062702, at *9 (noting the VE "testified that in her expert opinion, 'even though it's using technology and scanning, it would still be performed at the sedentary unskilled level'"); *see also Administrative Transcript, Tester-Kopec*, 1:25-cv-1, ECF #7 at PageID 1117 (VE testified "probably the major key is that [addresser, document preparer, and surveillance-system monitor] have not moved out of the sedentary, unskilled arena"). In each of these cases there was some affirmative evidence about how those jobs are performed today and whether the contemporary requirements are consistent with the claimants' RFCs. Without that, the court is left with the VE quoting the DOT requirements and opining Ms. Boscaljon's RFC is consistent with the DOT requirements. While this evidence may ordinarily be sufficient for jobs

not listed in the message, EM 24027 requires "additional evidence" that the jobs' "requirements are consistent with the individual's RFC" "as the occupation is currently performed" and there is none here. *Compare Administrative Transcript, Tester-Kopec*, 1:25-cv-1, ECF #7 at PageID 1117. Thus, the ALJ did not meet the first requirement of EM 24027.

The ALJ made the same error for EM 24027's second requirement: there was no evidence showing whether the document-preparer and surveillance-system-monitor jobs—as currently performed—exist in significant numbers in the national economy. The VE estimated there were 15,500 document preparer jobs and 3,000 surveillance-system monitor jobs in the national economy. (Tr. 726). But there is no indication by the VE about the currentness of those estimates. Notably, the VE had not placed anyone as a document preparer or surveillance-system monitor in the last five years (Tr. 731), suggesting her estimates may not be current. As the VE stated, those numbers were for "full-time, estimated DOT-specific jobs" and she had not independently confirmed those numbers through her own surveys. (Tr. 731). The VE also did not indicate if the estimates were also based on her education, training, and experience (as opposed to quoted directly from a secondary source), despite doing so elsewhere. (*See* Tr. 725-26, 727-28). Again, the court is left without evidence confirming the document preparer and surveillance-system monitor jobs—as currently performed—exist in significant numbers in the national economy. Rather, the court is left with the number of "full-time, estimated DOT-specific jobs" that, for the last five years, the VE has no placements. (*See* Tr. 731). EM 24027 requires "additional evidence" establishing the listed jobs exist as currently performed and so the Commissioner cannot rely on the ordinary testimony of VEs that may be sufficient in other cases relying on other jobs.

Indeed, in other cases on this issue, the VEs have expressly testified the document-preparer and surveillance-system-monitor jobs—as performed today—still exist in significant numbers in the national economy. *See, e.g.*, *Tester-Kopec*, 2025 WL 3628110, at *10 (concluding the estimated job numbers were recent because "[the VE] also explained 'the number [of positions] are very paltry compared to the hundreds of thousands I used to be able to quote 20 years ago'"); *Oswaldo N.*, 2025 WL 2062702, at *9 (noting the VE "testified that in her expert opinion . . . the [document-preparer] position remains available in significant numbers in the national economy"); *Ryan*, 2026 WL 1347418, at *8 (noting the VE "testified that there were respectively 70,000; 10,000; and 23,000 jobs for each occupation in the national economy, even considering how those jobs have changed since the time when the DOT was published"). Without similar affirmative evidence showing those jobs, as performed today, exist in significant numbers in the national economy, the ALJ did not comply with the second requirement of EM 24027.

In sum, the VE testified to the DOT requirements for document preparer and surveillance-system monitor, opined a hypothetical person with Ms. Boscaljon's RFC could perform those jobs, and stated those jobs exist in significant numbers in the national economy. While this may be sufficient in the ordinary case with other jobs, EM 24027 requires more than the ordinary evidence before an ALJ can rely on the listed jobs at Step Five. Though the VE discussed how the jobs' descriptions no longer match the DOT's descriptions, the VE did not discuss whether those jobs' requirements changed. Similarly, the VE did not discuss whether the estimates for the number of those jobs in the national economy reflect how those jobs are currently performed. EM 24027 requires "additional evidence" showing that (1) the jobs' requirements, as currently performed, are consistent with the individual's RFC and (2) those jobs, as currently performed,

15

exist in significant numbers in the national economy. The ALJ here had neither. Because the ALJ did not follow EM 24027 and the Commissioner did not meet his burden at Step Five, remand is required. *See Walters*, 127 F.3d at 528; *Wilson*, 378 F.3d at 546-47. I thus recommend the District Court remand the matter for additional proceedings to correct this error at Step Five.

## CONCLUSION AND RECOMMENDATION

Following review of the arguments presented, the record, and the applicable law, I recommend the District Court **REVERSE** the Commissioner's decision denying supplemental security income and **REMAND** the matter for additional proceedings consistent with this Report and Recommendation.

Dated: June 26, 2026

DARRELL A. CLAY
UNITED STATES MAGISTRATE JUDGE

## OBJECTIONS, REVIEW, AND APPEAL

**Within 14 days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to the proposed findings and recommendations of the Magistrate Judge. *See* Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1); Local Civ. R. 72.3(b). Properly asserted objections shall be reviewed de novo by the assigned district judge.**

**Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal, either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the Report and Recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the Report and Recommendation; "a general objection has the same effect as would a failure to object." *Howard v. Sec'y of Health & Hum. Servs.*, 932 F.2d 505, 509 (6th Cir.**

1991). Objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the Magistrate Judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-cv-186, 2018 WL 3018175, at *2 (W.D. Ky. June 15, 2018) (quoting *Howard*, 932 F.2d at 509). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).